Investigation Upon Commission Motion Into the Installment Sale Purchase Program of Metro Transportation Company, t/a Yellow Cab Company and Related Matters I-840378. Yellow Cab Owners and Drivers Association, a non-profit corporation incorporated in Pennsylvania, its Board of Directors, Officers, Shareholders, Petitioners Metro Transportation Co., t/a Yellow Cab Co., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued October 15, 1984, before Judges WILLIAMS, JR. and MACPHAIL and Senior Judge BARBIERI, sitting as a panel of three.

*Kathleen Herzog Larkin,* with her, *Zenola Harper, Lawrence J. Beaser* and *Norman E. Greenspan, Blank, Rome, Comisky & McCauley,* for petitioner, Metro Transportation Co., t/a Yellow Cab Co.

*Val Pleet Wilson,* with him, *Herbert Somerson, Somerson and Bomze, P.C.,* for petitioner, Yellow Cab Owners and Drivers Association.

*Alphonso Arnold, Jr.,* Assistant Counsel, with him, *J. Kenneth Simms* and *Kenneth L. Mickens,* Assistant Counsels, for respondent.

OPINION BY JUDGE MACPHAIL, February 21, 1985:

This case arises in both our original and appellate jurisdictions. Metro Transportation Company (Metro) and Yellow Cab Owners and Drivers Association (Association) have filed a petition for review in our original jurisdiction seeking a writ of prohibition to prohibit the Pennsylvania Public Utility Commission (PUC) from proceeding with its investigation at Docket No. I-840378. Metro and the Association also petition for review of an order of the PUC dated May 14, 1984, which denied Metro's Motion to Clarify and Motion to Sever in regard to the proposed investigation. This Court by order dated June 15, 1984, preliminarily enjoined the PUC from proceeding with its investigation pending disposition of the merits of the petitions for review.[1]

---

[1] The preliminary injunction was dissolved by the Supreme Court of Pennsylvania by order dated October 26, 1984.

The PUC has filed preliminary objections to the petition filed in our original jurisdiction and a motion to quash or dismiss the actions filed in our appellate jurisdiction. We will first consider the preliminary objections.

For the purpose of ruling upon the preliminary objections, we must accept as true all of the factual averments of the petitions. *Stabatrol Corporation v. Metzval Corporation,* 72 Pa. Commonwealth Ct. 188, 190, 456 A.2d 252, 253-54 (1983).

Metro is a Pennsylvania corporation and a public utility. In 1981 Metro acquired 800 Certificates of Public Convenience and other assets from the trustee in bankruptcy of the Yellow Cab Company of Philadelphia. This acquisition was subject to the condition that the PUC permit Metro, *inter alia,* to sell, 300 of the 800 Certificates to members of the Association. The Association is a not-for-profit Pennsylvania corporation which was created for the purpose of acquiring the 300 Certificates to be sold to its members. Metro and the Association are separate legal entities.

Because members of the Association were unable to purchase Certificates from Metro for cash, the PUC approved installment sales agreements between Metro and approximately 180 individual buyers. Title to the Certificates remains in Metro's name until the full purchase price has been paid.[2]

Metro has relied upon the PUC's approval of these agreements in various ways which substantially affect Metro financially.

---

[2] Subsequently, alternative financing was arranged. This refinancing was approved by the PUC. Metro retained $100.00 of each installment sales purchaser's obligation and acts as collection agent for the lenders. The refinancing was accomplished without the execution of new installment sales agreements; accordingly, title to each Certificate remains with Metro until the final $100.00 is paid by the buyer.

The PUC approved of Metro's planned actions in case of default by an installment sales purchaser, and Metro has exercised its rights as permitted by the sales agreements. The PUC has acted upon motions to rescind filed by Metro where individual purchasers have been in default. However, the PUC has not acted upon applications filed where Metro has entered into agreements to transfer these Certificates to new purchasers following defaults by the first purchasers, in spite of having agreed to act upon these matters in an expedited manner.

On March 26, 1984, the PUC revoked its agreement to act in an expedited manner, having decided, *sua sponte,* to investigate various aspects of the installment sales arrangements and the relationship between Metro, the Association, and the individual purchasers. It is this investigation which Metro and the Association seek to prohibit.[3]

At least one basis for the PUC investigation is complaints from installment sales purchasers. The PUC is concerned about possible irregularities in the administration of the installment sales program. The Association is not named as a party to the investigation; however, several of the twenty-five areas of concern specified by the PUC, relate to the activities of the Association.

A writ of prohibition is to be used as an extraordinary remedy, within the discretion of the Court. It is not a substitute for an appeal. *Carpentertown Coal & Coke Company v. Laird,* 360 Pa. 94, 102, 61 A.2d 426, 430 (1948). The writ of prohibition will not issue unless there is a clear usurpation of power by

---

[3] We have omitted a litany of the various motions and hearings before the PUC in this matter, finding it unnecessary to an understanding of the present posture of the case.

the inferior tribunal and a lack of an adequate alternate remedy. *See id.*

In ordinary cases where we are considering a demurrer, we are limited to a review of the factual allegations set forth in the petition for review in making a determination of whether a cause of action has been set forth. The posture of this case, however, is somewhat different because of the unique powers and authority of the Public Utility Commission as hereinafter set forth. The real gravamens of the case are the orders of the PUC instituting and defining the scope of the PUC investigation. The petitions for review in effect, challenge the operative effect of those orders. We believe, therefore, that in this instance we must consider the matters set forth in the orders[4] as

---

[4] The PUC order entered March 26, 1984, at I-840378, ordered as follows:

1. That an investigation upon Commission motion be and hereby is instituted into the Installment Sale Purchase Program, and all other related matters set forth above.

2. That the Office of the Administrative Law Judge shall assign this matter to an Administrative Law Judge, and shall schedule such hearings as may be necessary.

3. That a copy of this order be served upon Metro Transportation Company, Inc., the Yellow Cab Owners and Drivers Association and each individual transferee participating in the Installment Sale Purchase Program.

In response to Metro's motion to clarify the scope of the investigation and sever all matters not relating to Metro's operation of the Installment Sale Purchase Program, the PUC issued its order entered May 14, 1984. This order denied Metro's motion. Additionally, the PUC acknowledged 25 issues pertinent to its investigation and further stated

[i]n this separate proceeding, Metro also contends that we must make a preliminary determination as to our jurisdiction over the issues raised in our March 26, 1984 Order. According to Metro, the facts relating to that inquiry are distinct from the facts which it must produce in order to establish that it is properly administering the program. From our perspective, such a distinction does not exist.

well as those set forth in the petitions for review to determine whether the demurrer should be sustained. It should be noted at this time that copies of the orders are attached to the petitions for review.

The Association argues that the PUC has no jurisdiction in this matter or, in the alternative, that the PUC order exceeds its jurisdiction. By the terms of the Public Utility Code (Code)[5] the PUC is given broad powers to investigate public utilities or any other person or corporation subject to the provisions of the Code;[6] to enforce the provisions of the Code including modifying or rescinding PUC regulations

The issues raised in our Order, and the issues proposed by Trial Staff for investigation, concern or involve, directly or indirectly, Installment Sale Purchasers, just as any inquiry into Metro's administration of the Program will undoubtedly concern or involve these owner-operators.

The Association is made up of those Installment Sale Purchasers, who have been approved to purchase a Metro Certificate. Each of these owner-operators were [sic] granted the right to acquire a Certificate conditioned upon its [sic] compliance with the terms of an Installment Sale Purchase Agreement entered into between themselves [sic] and Metro.

As stated previously, we are duty bound to maintain regulatory control and oversee the issuance of certificates of public convenience, regardless of any modified proceeding previously approved. Furthermore, these Installment Sale Purchasers are participating in the provision of public utility services. (Footnote omitted.)

The twenty-five issues pertain to both Metro and the Association.

[5] 66 Pa. C. S. §§101-3315.

[6] Section 331 of the Code, *as amended*, 66 Pa. C. S. §331, which reads in pertinent part as follows:

(a) General rule—The commission may, on its own motion and whenever it may be necessary in the performance of its duties, investigate and examine the condition and management of any public utility or any other person or corporation subject to this part.

and orders;[7] to vary, reform or revise the terms of any contract between a public utility and another person or corporation where the subject of the contract concerns a public right, benefit, privilege or duty;[8] to subpoena and examine witnesses pertinent to any investigation which is undertaken;[9] and to approve and exercise supervisory control over contracts between public utilities and affiliated interests.[10] In view of this broad authority we do not believe we can say as a matter of law at this point in the proceedings that the PUC is without jurisdiction or is exceeding its jurisdiction by proceeding with its investigation.

> The power of prohibition vested in the superior tribunal is triggered only when it is clear that the inferior tribunal has begun to transgress an area clearly beyond its scope of concern. . . . Obviously, that point has not been reached

---

[7] Section 501 of the Code, 66 Pa. C. S. §501.

[8] Section 508 of the Code, 66 Pa. C. S. §508, which reads in pertinent part as follows:

> The commission shall have the power and authority to vary, reform, or revise, upon a fair, reasonable, and equitable basis, any obligations, terms, or conditions of any contract heretofore or hereafter entered into between any public utility and any person, corporation, or municipal corporation, which embrace or concern a public right, benefit, privilege, duty, or franchise, or the grant thereof, or are otherwise affected or concerned with the public interest and the general well-being of this Commonwealth.

[9] Section 309 of the Code, 66 Pa. C. S. §309.

[10] Sections 2102 and 2103 of the Code, 66 Pa. C. S. §§2102 and 2103. An affiliated interest  is defined in Section 2101(a) of the Code, 66 Pa. C. S. §2101(a), and includes, *inter alia,*

> (6) Every corporation or person which the commission may determine as a matter of fact after investigation and hearing is actually exercising any substantial influence over the policies and actions of such public utility even though such influence is not based upon stockholding, stockholders, directors or officers to the extent specified in this section.

where the inferior tribunal is merely considering the question of its jurisdiction to act. (Citations omitted.)

*Troiani Brothers, Inc. v. Pennsylvania Public Utility Commission,* 488 Pa. 386, 394-95, 412 A.2d 562, 567 (1980). It may well be that the PUC will determine in the course of the proceedings before it that it lacks jurisdiction to adjudicate the issues affecting the Association but that cannot be the basis for a writ of prohibition at this stage.

We hold that Metro and the Association have simply failed to allege actions by the PUC which are clearly beyond its statutory powers.[11] *See Akron Borough v. Pennsylvania Public Utility Commission,* 453 Pa. 554, 310 A.2d 271 (1973).

Additionally, Metro and the Association have not shown a lack of another adequate remedy. At such time as the PUC may issue a final order in regard to this matter, parties to whom the order is addressed certainly may appeal to this Court. The financial expense and trouble alleged by Metro do not make the remedy of an appeal inadequate. *Akron Borough,* 453 Pa. at 562, 310 A.2d at 275-276.[12]

For these reasons, the preliminary objection of the PUC, in the nature of a demurrer, will be sustained and the petitions for review directed to our original jurisdiction will be dismissed.[13]

---

[11] We note that we do not hereby decide that the PUC has jurisdiction over the Association.

[12] Although it is not certain that the investigation will result in a hearing and final order from the PUC, we do not find this sufficient to distinguish the present case from the rule enunciated in *Akron Borough.* This uncertainty simply emphasizes the prematurity of any prohibitory action by this Court. *See Troiani Brothers, Inc.*

[13] Having sustained this preliminary objection, we need not address the merits of the PUC's other preliminary objections.

We now consider the motion to quash or dismiss in terms of the petitions addressed to our appellate jurisdiction.

The PUC order of May 14, 1984, from which Metro and the Association appeal is not a final order, having the opposite effect from putting either Metro or the Association "out of court," and is, therefore, interlocutory. *See Robertshaw Controls Company v. Human Relations Commission,* 67 Pa. Commonwealth Ct. 613, 447 A.2d 1083 (1982). Section 763 of the Judicial Code[14] provides that this Court's jurisdiction with respect to the PUC is limited to final orders. *See Robertshaw,* 67 Pa. Commonwealth Ct. at 616, 447 A.2d at 1085. The PUC order of May 14, 1984, identifies the areas of focus for the proposed PUC investigation, reiterates the PUC's intention to proceed with the investigation and refuses to sever target issues of the investigation which Metro regards as not relevant to itself. We cannot find that to be a final order; consequently, we will grant the PUC's motion to quash the appeals.

### Order

The preliminary objection in the nature of a demurrer of the Pennsylvania Public Utility Commission is hereby sustained.

The writ of prohibition is refused and the petitions for review in the above captioned matters filed to this Court's jurisdiction pursuant to Section 761 of the Judicial Code, *as amended,* 42 Pa. C. S. §761, are dismissed.

The motion to quash or dismiss of the Pennsylvania Public Utility Commission is hereby granted. The appeals brought from the May 14, 1984, order of the Pennsylvania Public Utility Commission are here-

---

[14] 42 Pa. C. S. §763.

by quashed as having been brought from an inter-locutory order.

This decision was reached prior to the resignation of Judge WILLIAMS, JR.